## Congleton, et al. v. Bullock, Receiver of Bank of Kentucky, and Gorham.

## Gulley, et al. v. Bullock, Receiver and Gorham.

## McElroy, et al. v. Bullock, Receiver, and Gorham.

(Decided April 20, 1926.)

### Appeals from Fayette Circuit Court.

1. Banks and Banking—Stockholders' Committee Taking Over Assets of Bank, After Settlement by Asignee, for Benefit of Creditors, is Bound Only to Use Ordinary Care in Attempting to Rehabilitate Bank.—Stockholders' committee, to whom assets of bank were turned over, after settlement by assignee for benefit of creditors, is bound to use ordinary care and prudence in attempting to rehabilitate corporation, but is not an insurer.

2. Banks anl Banking—Approval of Receiver's Settlement in Suit Against Director of Bank Held Not an Abuse of Discretion, Though Offer was Made to Buy Claim at Slightly Greater Sum.—Judgment approving report of receiver of bank and directing settlement with director of bank, after prolonged litigation resulting in no benefit to stockholders, held not an abuse of discretion,

though an offer was made to buy claim at slightly greater sum than settlement.

3. Limitation of Actions.—Liability of directors of insolvent bank for acts occurring five years prior to commencement of receiver's action against them held barred by limitations, where stockholder's action for receivership was not revived after death of stockholder suing.

KELLY KASH and A. M. BAKER for appellants.

A. A. BABLITZ for appellee receiver.

GEORGE C. WEBB for appellee Gorham.

R. W. KEENON for other appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The articles for the incorporation of the Bank of Kentucky were filed on March 16, 1909. The bank began business July 12, 1909. In December, 1910, the bank made an assignment of all of its assets to J. W. Porter for the benefit of its creditors, etc. Porter paid off all the debts and on July 18, 1911, an order was entered in the suit he had brought to settle the estate, directing Porter to turn over to a committee of the stockholders of the bank the assets remaining in his hands. This he did, the face value of the assets so turned over being $129,475. The committee conceived the plan of reducing the stock of the bank and reorganizing it, but some of the stockholders were dissatisfied and on April 18, 1914, J. W. Marr, one of the stockholders, filed an action for the appointment of a receiver. On July 1, 1914, William Worthington was appointed as such receiver and directed to take charge of the papers and assets of the corporation. A. M. Baker, Marr's attorney, was then allowed for his services up to that time, $1,500.00, to be paid by the receiver out of the first money received, and to bear interest from that date. On July 10, 1915, an amended petition was filed by Marr, setting up a number of wrongs alleged to have been done by the directors of the bank and praying judgment against them therefor. On March 4, 1916, the receiver was ordered to sue the directors for these matters. The receiver filed suit September 16, 1916; answers were filed and the issues were made up. On March 17, 1919, the receiver filed a report to the effect that he could settle with certain of the directors, and

that they would pay him $5,250.00 in settlement of the claims sued on. Without objection this settlement was approved by the court; the money was paid and the action was dismissed as to all the directors except John B. Gorham. After this, in December, 1919, the receiver began his deposition. This deposition was completed in August, 1920, and other depositions were taken some months later. After this Mr. Worthington died, and on October 21, 1922, Frank A. Bullock was appointed receiver and substituted for Worthington. A settlement of Worthington's accounts was then made, showing that there was in his hands something over $700.00 after paying the allowances to him and his attorney, A. M. Baker, and the costs of the actions. Bullock, on March 26, 1923, filed a report showing that John B. Gorham, the only director who had not been settled with, would pay $500.00 in settlement of the claims against him. He advised the acceptance of the offer. His attorney also filed his statement showing that he had carefully examined the record and approved the settlement. A. M. Baker filed an offer to pay $550.00 for the claim against Gorham and agreed to prosecute the claim at his cost for the benefit of the creditors and stockholders of the bank. The court hearing the matter approved the report of the receiver and directed the settlement made. The three appeals before us are prosecuted from this order and will be disposed of together.

It will be observed that this litigation in one form or another has been going on since 1910, and in that time none of the stockholders of the bank have realized anything from it. It will also be observed that all of the directors, except Gorham, have been settled with. If anything improper was done it was done by all of the directors who took the action complained of. Much of the things complained of occurred more than five years before September, 1916. Marr died during the progress of the action and his executor was unwilling to have it revived, so no revivor was ever had. It is shown by the proof that Gorham paid in full for all the stock he subscribed for, $5,000.00. But some of the other directors who were settled with had failed to pay their subscriptions. It was also shown by the proof that Gorham was not present when much of the action complained of by the other directors was taken. When the things were done which occurred after the year 1912, the bank had made an assignment. Gorham and his associates were

simply a committee working for the best interests of the stockholders in an effort to rehabilitate the corporation. They were bound to use ordinary care and prudence, but they were not insurers. It is a fair presumption that if the litigation had continued it would have been conducted much as it had been in the past and probably with like results, that is, little if anything would have been accomplished for the benefit of the stockholders. In 1 Tardy's Smith on Receivers, section 56, the rule on the subject is thus stated:

"The court in the interest of the estate may authorize and empower the receiver to compromise disputed and doubtful claims, by receiving less than the amount due if it shall appear expedient so to do and to the best interest of creditors, stockholders, or those interested.

"In determining whether to authorize a receiver to make compromise, the court decides a question of prudence, and should consider the probable validity of the receiver's claim, the difficulties in enforcing it, the delay and expense likely to be thereby occasioned, and the relative amounts of both the assured recovery and the amount surrendered by the compromise.

"The action of the court in authorizing a receiver to compromise a claim or suit will not be reviewed on appeal in the absence of an abuse of discretion."

In view of all the facts the judgment of the chancellor was clearly not an abuse of discretion. The offer of Baker was not an offer to settle the claim, it was an offer in substance to buy. The amount of the difference between the two offers was so small as to be negligible, so far as the interest of each of the stockholders goes. If the chancellor was going to sell the claim he should have sold it at public auction. Under all the circumstances the court does not see that he abused a sound discretion in approving the settlement and putting an end to this prolonged litigation.

All that occurred before September, 1911, was barred by the five year statute of limitation, for the Marr action had not been revived and no process had issued on the cross-petition of the receiver in that action. The main thing complained of is the fact that after Porter as assignee turned back the assets in his hands to the

committee of the stockholders, those having charge used about $10,000.00 of these assets in buying outstanding stock at 30c on the dollar, but at the time they did this they thought the stock was worth 30c on the dollar or more, and that in this way they could succeed in reorganizing the bank and save to the same extent the investment of the other stockholders. Gorham got no private benefit from this transaction; he was simply interested as a stockholder; the action was taken upon a paper presented to them which purported to be signed by the stockholders. It turned out out afterwards that some of the stockholders had not signed this paper, but they acted innocently without knowing this and thinking that they were acting for the best interest of the stockholders. including themselves, as such.

Judgment affirmed.